IN THE MATTER OF JAMES A. McGOVERN, SUBDEALER, APPELLANT, v. FLOYD R. HOFFMAN, DIRECTOR OF THE OFFICE OF MILK INDUSTRY OF THE DEPARTMENT OF AGRICULTURE OF THE STATE OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 5, 1962—Decided March 19, 1962.

Before Judges GOLDMANN, FREUND and FOLEY.

*Mr. Ralph C. DeRose* argued the cause for appellant (*Messrs. Adams, DeRose, Bliablias & Serratelli,* attorneys).

*Mr. Marvin M. Wodlinger,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

FOLEY, J. A. D.  This is an appeal from a determination and order of the Director of the Office of Milk Industry (O. M. I.), revoking plaintiff's subdealer's license on the ground that the licensee violated a condition of his license imposed by the Director at the time of its issuance.

On August 26, 1960, following a hearing, plaintiff's application for a subdealer's license was granted.  Annexed to the license was the following condition:

"This license is granted upon the following express condition: The licensee, in his activities as a subdealer, is not to employ or to associate with in a business capacity any person who previously has been responsible in whole or in part for any act on account of which a license may be denied, suspended or revoked pursuant to the provisions of the Milk Control Act. (*N. J. S. A.* 4:12A–1 *et seq.*)"

Prior to the issuance of the license appellant had been employed as a milk truck driver by the E. J. McGovern Dairy Products, Inc., a New Jersey corporation which held a subdealer's license. His brother Eugene J. McGovern was president of this corporation, and in managerial charge of its operation. Pursuant to *N. J. S. A.* 4:12A–35 this license had been revoked because the company, through Eugene J. McGovern, had (1) purchased milk at prices lower than the minimum fixed by O. M. I., (2) done so pursuant to a secret agreement between the dealer and the licensee for their payment, and (3) then filed a false sworn monthly report with O. M. I. that it had made no purchases at prices lower than the minimum price fixed by O. M. I. The revocation was affirmed by this court. See, *In re E. J. McGovern Dairy Products,* 60 *N. J. Super.* 163 (*App. Div.* 1959), affirmed o. b. 31 *N. J.* 601 (1960).

At the hearing on plaintiff's application for a subdealer's license he was interrogated concerning his possible business association with his brother Eugene, in the event that his application were granted. In this connection the following appears in the record:

"Q. Now, to make this very clear, should you be granted a license, would you have any relationship whatsoever, be it by even a debt or by silent partnership or anything along these lines, with E. J. McGovern?

A. No, sir, none whatsoever.

Q. Would you have any relationship again in a broader sense with E. J. McGovern Dairy Products Corporation?

A. No, sir."

The license was then issued with the quoted condition inserted.

Subsequently, O. M. I. issued an order to show cause why plaintiff's license should not be suspended or revoked, and a hearing thereon was conducted on November 21, 1960. At that hearing testimony was adduced through several witnesses, which established that on a number of specified dates between October 31, 1960 and November 17, 1960 Eugene J. McGovern had been observed making deliveries of milk to certain of plaintiff's customers. When called as a witness by appellant, Eugene admitted that on nine or ten occasions during the period mentioned he had made deliveries of milk in his brother's behalf. His explanation was that he did so at his brother's request, when truck drivers regularly assigned to routes did not appear for work, and that he was not paid for his services. Upon the testimnoy described the Director revoked the license, holding:

"The testimony * * * convinces me that Eugene McGovern operated a route for James McGovern regularly during the two months preceding the hearing. James McGovern was aware of this situation and further was aware that it was in violation of N. J. S. 4:12A–35(11). (This section specifically covers the employment of persons who were responsible for an act on account of which a license may be revoked.) Eugene McGovern is such a person. I, therefore, find that James McGovern breached the condition annexed to his subdealer's license and violated N. J. S. 4:12A–35(11)."

*N. J. S. A.* 4:12A–35 provides:

"The director after hearing duly held in accordance with the provisions of this act, may decline to grant a license or may issue a license conditionally, * * * when satisfied of the existence of any of the following:

* * * * * * *

(11) That the applicant or licensee is a partnership, corporation, firm or association and any individual holding any position or interest or power or control therein has previously been responsible in whole or in part for any act on account of which a license may be denied, suspended or revoked pursuant to the provisions of this section or law or the similar laws which preceded it. * * *"

Plaintiff challenges this action of the Director upon the grounds that (1) he exceeded his statutory power and au-

thority in imposing a condition in the license, (2) the condition imposed was arbitrary, capricious and discriminatory, and (3) the circumstances of the alleged violation of the condition did not constitute a practice, the control and punishment of which were within the authority of the defendant.

## I.

In challenging the jurisdiction of the Director to revoke the plaintiff's license in the circumstances outlined, plaintiff argues that the authority in the first instance to grant a license conditionally, under *N. J. S. A.* 4:12A–35, is limited to the imposition of a condition relating to the conduct of the *applicant* prior to the hearing on the application for license. Hence, argues plaintiff, since the condition imposed had no relation to his own conduct, but rather to the prior conduct of his brother Eugene, there was no legislative sanction for the imposition of the condition in question. On this premise plaintiff argues also that *N. J. S. A.* 4:12A–35(11) vests revocation authority in the Director only where the *applicant* or *licensee* has prior to the issuance of the license committed an act on account of which a license may be denied, suspended, or revoked. So, claims plaintiff, there is no factual basis for revocation in this case.

Even if it be assumed that these contentions rest upon a fair analysis of *N. J. S. A.* 4:12A–35(11), a reading of the act as a whole convinces us that the power in the Director reasonably to condition the issuance of a license, and to revoke for noncompliance with such condition, is not so delimited.

The fundamental purpose of the Milk Control Act is to serve the public interest in the milk industry by preserving the agricultural interests engaged in the production of this indispensable commodity. To further this end the Legislature endowed the Director with broad ad-

ministrative and *quasi*-judicial authority. For example, in enumerating the powers of the Director, it provides:

"The director may * * * supervise, regulate and control the entire milk industry of the State of New Jersey, including * * * transportation, disposal, sale * * * or distribution of milk * * * in every way necessary to carry out the purposes of this act and necessary to control or prevent unfair, unjust, destructive or demoralizing practices which are likely * * * to interfere with the maintenance of a fresh, wholesome supply of sanitary milk for the consumers of this State * * *." *N. J. S. A.* 4:12A–21.

The statute is replete with references to the Director's right to impose conditions on the issuance of a license. In some instances the grant of this authority is explicitly set down, in others it appears implicit in the pattern of the legislation. Among other statutory provisions the following may be noted:

"To effectuate the orderly sale and distribution of milk between dealers, processors, subdealers and stores, and carry out the provisions of this act, the director is hereby empowered to promulgate and *enforce conditions*, terms and credit regulations governing such sales." *N. J. S. A.* 4:12A–26 (Emphasis added)

In *N. J. S. A.* 4:12A–34 express recognition is given to the power of the Director to condition or limit a license:

"Before declining to grant a license or *conditioning or limiting a license* * * * the director shall give notice to the applicant * * * and afford him an opportunity to appear and be heard with respect thereto * * *." (Emphasis added)

Additional provisions of *N. J. S. A.* 4:12A–35, *supra,* specify that the Director may decline to grant a license or to issue one *conditionally* when satisfied:

"(4) That the applicant * * * has committed any act * * * which may demoralize the price structure of milk * * *.
* * * * * * *
(12) That the applicant or licensee has violated any of the provisions of this act, or any of the rules, regulations or orders of the

director or has violated any of the provisions of similar laws or of orders, rules and regulations issued thereunder which have preceded this act."

The foregoing recital demonstrates a legislative intention to confer on the Director the broadest of powers (including the conditioning of a license at the time of its issuance) in order to attain the ultimate statutory objectives. If there be any doubt as to the intended latitude of the director's regulatory authority, it is dispelled by *N. J. S. A.* 4:12A–48 which provides:

"The operation and effect of any provision of this act conferring a general power upon  \*  \*  \*  the director shall not be impaired or qualified by the granting to  \*  \*  \*  the director  \*  \*  \*  of a specific power or powers, not inconsistent with the provisos contained in [*N. J. S. A.* 4:12A–21]  \*  \*  \*."

Plainly, in the light of the interrogation of the plaintiff at the hearing on his application for a subdealer's license, the object of the condition imposed was to foreclose the possibility that Eugene J. McGovern, who had previously violated *N. J. S. A.* 4:12A–30 (prohibiting a secret agreement for price reduction), would have any business connection whatever with plaintiff should the license be issued. That the prior violation by Eugene J. McGovern was one which tended to demoralize the price structure of milk cannot be doubted. Clearly, the right to impose a condition on a license which would forestall the creation of or the resumption of such a practice inhered in the statutory powers of the Director heretofore noted.

Fully aware of the condition in the license, the importance attached to it by the Director, and the purpose of it, plaintiff, nevertheless, permitted Eugene J. McGovern to fill the duties of a truck driver on plaintiff's milk delivery route. By doing so plaintiff personally violated the condition of the license and became subject to revocation proceedings.

 The scope of the Director's authority to revoke a license is no less than that expressly, or implicitly, granted

to him to issue a license on condition, and includes the right to revoke for violation of any condition which is designed to serve the fundamental purposes of the act. As we have already noted, the Director found that plaintiff had "breached the condition annexed to his subdealer's license and violated *N. J. S. A.* 4:12A–35(11)." Thus, even if it may be said that *N. J. S. A.* 4:12A–35(11) is of questionable application to the facts in this case the broader ground of revocation, namely, violation of any such condition, furnished sufficient basis for the action taken.

In reviewing orders of administrative bodies charged with the regulation and policing of commerce in which the public interest is great, courts should not stand on the niceties which are applied to the examination of indictments in the criminal law, when, as here, the scope of an administrative order designed to serve the public welfare is well known to a licensee, and his violation of it is flagrant.

We therefore conclude that the Director did not exceed his statutory power in conditioning the subdealer's license at the time of issuance, that the condition imposed was not "arbitrary, capricious or discriminatory," as plaintiff contends, but constituted a reasonable regulation designed to protect the industry; and further that the revocation of the license by the Director was fully supported by the proofs.

## II.

In the preceding point we have dealt with the condition imposed, and the right of the Director to impose it, on the merits. We deem it advisable to observe that the raising of these issues by the plaintiff comes too late. If at the time of the issuance of the license plaintiff questioned either the Director's right to grant it conditionally, or the reasonableness of the condition, it was his privilege to reject the proffer and raise the issue of the Director's lack of authority or arbitrariness in an appropriate proceeding. Instead, he took the license in its qualified state, and enjoyed the privileges which it conferred upon him. By doing so

he may not now be heard to complain of a condition which he willingly accepted. As was aptly said in *Callanan Road Improvement Co. v. United States*, 345 *U. S.* 507, 513, 73 *S. Ct.* 803, 806, 97 *L. Ed.* 1206 (1953):

"The appellant cannot blow hot and cold and take now a position contrary to that taken in the proceedings it invoked to obtain the Commission's approval. If the appellant then had taken the position it seeks now, the Commission might conceivably have refused its approval of the transfer. The appellant accepted the transfer with the limitations contained in the certificate."

Affirmed.